MOODY et al. v. CHESSER et al.   (No. 8300.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 18, 1916. Rehearing Denied Feb. 5, 1916.)

1. APPEAL AND ERROR ⬦⟾1057 — HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Error, if any, in excluding evidence offered by plaintiff to prove a fact admitted by defendant, is not prejudicial to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4194–4199, 4205; Dec. Dig. ⬦⟾1057.]

2. APPEAL AND ERROR ⬦⟾1062 — HARMLESS ERROR—SUBMISSION OF SPECIAL ISSUES.

Where, in an action by the trustees of a school district against former trustees and a private bank which had received funds of the district and paid the same out on warrants of the former trustees, it was admitted that the funds were paid out on warrants, not approved by the county superintendent, and the jury found that the funds were paid out for the benefit of the district, refusal to submit special issues seeking to elicit the amount of money received by the bank on account of the district from all sources and whether the money had been paid out on warrants approved by the county superintendent was not reversible error in view of the admitted facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ⬦⟾1062.]

3. SCHOOLS AND SCHOOL DISTRICTS ⬦⟾95— FUNDS OF DISTRICTS—LIABILITY OF BANK AND FORMER TRUSTEES.

Where a private bank receiving money of a school district paid the same out on orders of the trustees of the district for the benefit of the district, and the bank and the trustees acted in good faith, the mere fact that the orders were not approved by the county superintendent as provided by Rev. St. 1911, art. 2756, did not authorize the district to recover the money at the suit of new trustees.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 218–222, 277, 278; Dec. Dig. ⬦⟾95.]

Appeal from District Court, Knox County; J. A. P. Dickson, Judge.

Action by J. A. Moody and another against Louis Chesser and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

See, also, 173 S. W. 917.

James A. Stephens, of Benjamin, for appellants. D. J. Brookreson, of Benjamin, for appellees.

CONNER, C. J. J. A. Moody and W. A. Brown, as the present trustees of common school district No. 3 in Knox county, instituted this suit against the First Bank of Truscott, a partnership doing a banking business alleged to be composed of Louis Chesser and others, and against N. J. Allen, S. B. Maddox, and others, who it was alleged had theretofore been the duly elected, qualified, and acting trustees for the same school district, to recover specified sums of money ranging from $410.65 to 73 cents, and aggregating a total of $977.55. In substance, the petition charged that said former trustees had collected the said sums of money and deposited the same to their credit in the said First Bank of Truscott, and that thereafter they had drawn out and appropriated the same upon checks or vouchers without the approval of the county superintendent. It was charged that said money constituted part of the school fund of the district named, and that said withdrawal and use by the defending trustees was unlawful. The prayer therefore was that the plaintiffs might have judgment recovering the sum stated.

The defendants answered by certain demurrers not necessary to be noticed and by general and special denials, and further specially answered that all the money collected by them or any of them while they were acting as trustees of school district No. 3 was paid out by them for the special use and benefit of the school district, except $94.40 that was on hand at the termination of their services and which was surrendered and delivered by them to their successors in office, and that if there was any irregularity in the manner in which said money, or any of it, was paid out, which was not admitted but specially denied, the same did not result in harm to the district, but that, on the contrary, the district received the full benefit of all of the money belonging to it ever handled by the defendants, or any of them, and that such money was expended by them for lawful purposes in the management, equipment, and maintenance of said school district.

The case was submitted to a jury upon the following special issues:

"First Special Issue. What amount of money was received from all sources by the Bank of Truscott from the trustees of the Truscott school district; or from any other source, if any, for the use of said school district?

"Second Special Issue. What amount of money was expended by the board of trustees of the Truscott school district that had been deposited for the use of said district in the Bank of Truscott?

"Third Special Issue. Did the Bank of Truscott or the board of trustees of the Truscott school district pay out any of the funds of said school district for any purpose other than for the benefit or use of the school of said district? If so, what amount, and to whom?

"Fourth Special Issue. Did the Bank of Truscott pay to the trustees of the Truscott school district all of the money received by it for said school district?

"Fifth Special Issue. Did the Bank of Truscott pay out any of the funds of the Truscott school district deposited with it without authority from the trustees of said district?"

To which the jury returned the following answers:

"To the first issue we answer: Nine thousand, six hundred forty-two and $70/100$ dollars ($9,642.70).

"To the second issue we answer: Nine thousand, six hundred forty-two and $80/100$ dollars ($9,642.80).

"To the third issue we answer: No.

"To the fourth issue we answer: Yes.

"To the fifth issue we answer: No."

Upon the answers of the jury so given the court rendered its judgment in favor of the defendants, and the plaintiffs have appealed.

As we interpret the record, appellees question only the expenditure of the sums of money specified in their petition and for which a recovery was sought, it appearing that other sums comprehended within the verdict of the jury were expended in the building of a new schoolhouse and in other ways about which there seems to be no controversy. What therefore we say in our disposition of the appeal must be understood as relating alone to the sums of money mentioned in the plaintiffs' petition.

[1] Appellants' first assignment questions the court's ruling in refusing to admit what is designated as "debit slips and checks and vouchers" of the defendant bank, ranging from $272 to $3 and aggregating $407.57. The record discloses that an auditor had been appointed to state the account between the school district and the bank, and the auditor had reported the items referred to as proper debits against the school district, and it appeared in the evidence that the debits or checks had been entered and paid by the bank upon the order of the school board, and the money used for "seats," presumably for the new schoolhouse which had been built, for freight, on account of taxes, etc., and the debit slips were offered by the plaintiffs, as shown by the bill of exception taken to the court's ruling, as "tending to prove that said money was expended without the approval of the county superintendent of Knox county." We find no error in the court's ruling in this respect, inasmuch as the defendants in open court "admitted that all of the moneys expended as shown by the auditor's report were expended without the approval of the county superintendent." We fail to see in what way the court's ruling operated to the prejudice of the plaintiffs, in view of the admission referred to and of the fact that it otherwise appears that the several sums specified in the several debit slips or checks offered were paid out by the bank upon the order of the old school board. The first assignment is, accordingly, overruled.

[2] The second assignment is directed to the court's refusal to submit special issues seeking to elicit the amount of money received by the First Bank of Truscott on account of school district No. 3 from all

sources, and whether said money had been paid out on vouchers or warrants approved by the county superintendent. But in view of the admitted fact that the sums of money for which the plaintiffs sued in this action were not so paid out, and in view of the findings of the jury already given, we think there can be no reversible error predicated upon the action of the court in this respect. The assignment will, accordingly, be overruled without further detailed notice.

[3] The third assignment questions the verdict and judgment on the ground that the uncontroverted evidence shows that the money in question for which a recovery is sought belonged to school district No. 3, and that it had been paid out without the approval of the county superintendent, and we think this presents the vital question in this case.

The evidence shows that school district No. 3 had issued bonds in the amount of $8,000 for the building of a new schoolhouse, and which sum of money had been appropriated for that purpose; that of the amounts specified in the plaintiff's petition the sum of $410.65 had been received by defendant trustees as the proceeds of the sale of the old schoolhouse; that a further sum of $50 had been received by them as rent for the school building, and a further sum of $25.08 as a rebate on the shipment of school seats. The other sums specified in the plaintiffs' petition had been received by the old trustees under the following circumstances, to wit: A special tax had been levied upon the property in the district for the purpose of maintaining a school therein for the current year, which tax had, using the language of one of the witnesses, been "killed" by the issuance of an injunction. Thereupon the residents of the district agreed among themselves to severally donate for the purpose stated such sum as they would have been required to pay had the tax levied not been interrupted. These several sums, together with the sum received from the sale of the old schoolhouse and rent, as stated, were all placed in the First Bank of Truscott by the old trustees, and that bank entered upon its books the aggregated sum to the credit of the school district. From time to time thereafter during the course of the year, it seems that the old trustees, as occasion required, would draw checks upon this fund which were paid by the bank, and the jury not only finds, but the evidence is undisputed, that all of the checks so drawn and all of the sums so used by the defending trustees were paid out and appropriated in the way of school seats and (presumably) in payment of school teachers' vouchers, etc., for the benefit of school district No. 3; that is, all of said aggregated amount, except the sum of $94.40, which remained on hand to the credit of the district. This sum of $94.40 was later paid out upon the check of the new board and by the new board deposited in the coun-

ty depository to the credit of the district. There is evidence tending to show that the vouchers issued to the school teachers had the approval of the county superintendent. But it is not clear in the record just what part of the aggregated sum was thus paid to teachers during the period that the defending trustees were managing the district, but it is certain that the remaining sums, and for the purposes of this suit we will say all sums, were paid out upon the orders or checks of the old board of trustees without the county superintendent first having approved them. It indeed appears that the balance of $94.40 referred to was drawn out and deposited in the county depository for the benefit of school district No. 3 without the formal approval of the county superintendent, although one of the witnesses testified to the effect that he was present and consented thereto.

In prescribing the duties of a county superintendent, it is provided, among other things (see Revised Statutes 1911, art. 2756) that:

"The county superintendent shall approve all vouchers legally drawn against the school fund of his county."

And appellants cite several cases including Kleinsmith v. Northcut, 56 S. W. 557, and Bodystun v. Rockwall County, 23 S. W. 541, in aid of the proposition that the requirement of the statute above quoted is mandatory. In a general way it must, of course, be so implied from the terms of the statute; but upon an examination of the cases cited it will be found for the most part that they were cases where the funds paid out were so paid by a county treasurer or depository and where the particular fund in question had been either paid out for an unlawful purpose or in some way misappropriated. But no case has been cited that, as we think, supports appellants' contention of liability in this case. County treasurers and county depositories occupy an official or quasi official relation to the county, or school districts, as the case may be. Their duties with relation to these funds belonging to the county or district are specifically written in the law, but it is to be observed that in the case of the bank now before us no official relation existed whatever. It was a mere private bank that upon tender received certain money which was deposited to the credit of common school district No. 3 by the direction of the depositors. Ordinarily, this would but create the relation of a debtor to the persons making the deposit, and ordinarily payments upon the proper checks or orders of such persons would be authorized. True, in case of deposits as here, and if it was made to appear that the bank so receiving such fund paid it out, even to the depositors, with knowledge that the same was to be misapplied or misappropriated, a liability in favor of the real owner of the fund might arise. But such is not true here. Here, it is undis-

puted that every dollar of the money deposited by the old trustees of the school district was by them drawn out and applied for the benefit of the district. The good faith and bona fide purpose of the parties is in no way questioned. It appears that the reason why the approval of the county superintendent was not sought was because the parties viewed the sum so deposited, particularly the sums arising from donations of the citizens of the district, as gratuities of a character not requiring the county superintendent's approval. It is not pretended that the county superintendent could or would have refused his approval of the expenditure of any sum whatever that was expended by the old trustees. Upon what principle of justice, therefore, can it be said that the new trustees, who sue alone as the representatives of the school district, should be permitted to recover in this action, when, as found by the jury and as shown by the undisputed evidence, the school district has in fact received the full benefit of all sums specified in the plaintiffs' petition? For aught that the record shows, the $94.40 included within the amount deposited by the old trustees is now in the hands of the county depositary subject to the order of the very plaintiffs in this suit. The demand of the plaintiffs may be within the letter of the law, as Shylock's was within the letter of his bond; but clearly, as we view the facts, it is not within the spirit of the law.

All assignments are, accordingly, overruled, and the judgment is affirmed.